# Exhibit A

SENATE BILL No. 375

AN ACT concerning consumer protection; relating to investments; enacting the proxy advisor transparency act; providing legislative findings and definitions; requiring proxy advisors to make certain disclosures when recommending an action against company management; authorizing the attorney general to investigate and take enforcement actions against violators.

*Be it enacted by the Legislature of the State of Kansas:*

Section 1. The provisions of sections 1 through 6, and amendments thereto, shall be known and may be cited as the proxy advisor transparency act.

Sec. 2. The legislature of the state of Kansas finds the following:

(a) When shareholders hire professionals to manage investments, such shareholders reasonably expect that the service provider will perform those services in the financial interest of the shareholders, and that the service provider will make recommendations based on financial analysis of what actions would enhance investment value;

(b) there is a particular need for disclosures for proxy voting advice, because such advice is often provided for hundreds or thousands of shareholder votes each year and, with few investors having the resources to research every shareholder vote, investors often use proxy advisors for guidance on how to exercise fiduciary duties;

(c) many companies hire proxy advisors pursuant to the United States department of labor's long-standing conclusion that, under the employee retirement income security act, the "fiduciary obligations of prudence and loyalty to plan participants and beneficiaries require the responsible fiduciary to vote proxies on issues that may affect the value of the plan's investment";

(d) directors of publicly held companies owe fiduciary duties to shareholders and make recommendations in line with such fiduciary duties;

(e) nevertheless, proxy advisors have recommended votes against company management, including votes for shareholder proposals related to environmental, social or governance (ESG) issues, diversity, equity or inclusion (DEI) issues and social credit and sustainability scores, but have not disclosed to clients that the recommendations were made without conducting a financial analysis to determine how these votes would affect shareholder value;

(f) the chief operating officer of Glass Lewis, a major proxy advisor, stated under penalty of perjury that Glass Lewis does not conduct a written financial analysis before recommending votes on shareholder proposals and that other proxy advisors also do not do so. Proxy advisors, however, have advertised that the purpose of their recommendations is maximizing, increasing or protecting shareholder value;

(g) these facts raise concern that proxy advisors are engaged in fraudulent or deceptive practices and are not disclosing material information to their clients, who otherwise would reasonably believe that they are choosing between recommendations of management and a proxy advisor that are based on dueling financial analyses;

(h) investors purchasing proxy voting services should be informed when recommendations against management are or are not being based on financial analyses that consider the effect on the value of the plan's investment. Investors also should be able to access such analyses upon request in order to assess whether the analyses were sufficient to uphold fiduciary standards;

(i) requiring proxy advisors to provide clear and factual disclosures under these circumstances helps investors evaluate whether the proxy advisor's recommendations uphold investors' fiduciary duties of prudence and loyalty; and

(j) requiring proxy advisors to inform companies of these

SENATE BILL No. 375—page 2

recommendations also promotes disclosures in accordance with fiduciary duties. An example of which is a company that is the subject of a shareholder proposal often has additional information regarding whether a proposal is in the shareholder's financial interests or regarding the costs of a proposal, and notice of a proxy advisor's recommendation allows the company to provide additional responsive information to shareholders seeking to uphold their fiduciary duties.

Sec. 3.   As used in this act:

(a)   "Act" means the proxy advisor transparency act.

(b)   "Affiliated group" means a group of one or more entities in which a controlling interest is owned by a common owner or owners, either corporate or noncorporate, or by one or more of the member entities.

(c)   "Charitable organization" means an organization that is exempt from federal income taxation under section 501(c)(3) of the internal revenue code of 1986.

(d)   "Company" means a publicly traded, for-profit corporation, limited liability company, partnership or other business entity.

(e)   "Company proposal" means any proposal made by a company to such company's shareholders that is included in the company's proxy statement, including, but not limited to, director nominations or elections, or any proposal relating to director nominations or elections, executive compensation, corporate transactions, corporate structure, auditor selection or company policy on any subject.

(f)   "Default recommendation or policy" means a system, set of rules, principles or guidelines designed to assist with voting decisions on any company proposals or proxy proposals.

(g)   "Proxy advisor" means a person who, for compensation, provides a proxy advisory service to shareholders of a company or to other persons with authority to vote on behalf of the shareholders of a company.

(h)(1)   "Proxy advisory service" means any of the following services that are provided in connection with or in relation to a company, or are provided to any person in this state:

(A)   Advice or a recommendation on how to vote on a company proposal or proxy proposal;

(B)   proxy statement research and analysis regarding a company proposal or proxy proposal; or

(C)   development of proxy voting recommendations or policies, including establishing default recommendations or policies.

(2)   "Proxy advisory service" does not mean a service that is provided by a:

(A)   Charitable organization if:

(i)   Such charitable organization's gross annual revenue from proxy advisory services is less than $500,000; and

(ii)   if applicable, each affiliated group of such charitable organization has combined gross annual revenue from proxy advisory services that is less than $500,000; or

(B)   bank, savings and loan association or savings bank, or an affiliate thereof, if such entity derives less than 10% of such entity's gross annual revenue from proxy advisory services.

(i)   "Proxy proposal" means any proposal made by a shareholder of a company that is included in the company's proxy statement or has been submitted for inclusion in the company's proxy statement, including, but not limited to, a proposal relating to any of the subjects that could be covered by a company proposal.

(j)   "Shareholder" means a shareholder, unitholder, limited partner or other equity owner of a company.

(k)   "Written financial analysis" means a written document that:

SENATE BILL No. 375—page 3

(1)  Analyzes the expected short-term and long-term financial benefits and costs to the company regarding the implementation of a company proposal or proxy proposal;

(2)  concludes what vote or course of action is most likely to positively affect shareholder value; and

(3)  explains the methods and processes used to prepare the analysis, including the experience and geographic location of the personnel who formed the recommendation.

Sec. 4.   (a) If a proxy advisor makes a recommendation against company management on a company proposal or proxy proposal, or makes a default recommendation or policy involving votes against company management on company proposals or proxy proposals, and such proxy advisor does not make such recommendation based on a written financial analysis, such proxy advisor shall:

(1)  Concurrently with providing the proxy advisory service, include a clear and conspicuous disclosure to each shareholder, or entity or other person acting on behalf of a shareholder, receiving the proxy advisory service that:

(A)   Identifies the service being provided;

(B)   identifies the recommendation or policy at issue; and

(C)   states that the proxy advisor has made the recommendation or policy without basing such recommendation on a written financial analysis regarding the impact of such recommended action on company investors that:

(i)  Analyzes the expected short-term and long-term financial benefits and costs to the company regarding the implementation of the company proposal or proxy proposal;

(ii)  concludes what vote or course of action is most likely to positively affect shareholder value; and

(iii)  explains the methods and processes used to prepare the analysis, including the experience and geographic location of the personnel who formed the recommendation;

(2)  provide, concurrently with providing a proxy advisory service under section 3(h)(1)(A) or (1)(B), and amendments thereto, the disclosure under subsection (a)(1) to the board of directors of each company that is the subject of the proxy advisory service; and

(3)  while any proxy advisory services are being provided, publicly and conspicuously disclose on the home or front page of the proxy advisor's website a statement that the proxy advisor's proxy advisory services include one or more services that include recommendations or policies against company management on company proposals or proxy proposals that are not made based on a written financial analysis regarding the impact of such recommended action on company investors that:

(A)  Analyzes the expected short-term and long-term financial benefits and costs to the company regarding the implementation of the company proposal or proxy proposal;

(B)  concludes what vote or course of action is most likely to positively affect shareholder value; and

(C)  explains the methods and processes used to prepare the analysis, including the experience and geographic location of the personnel who formed the recommendation.

(b)   If a proxy advisor makes a recommendation against company management on a company proposal or proxy proposal, or makes a default recommendation or policy involving votes against company management on company proposals or proxy proposals, and such proxy advisor makes such recommendation based on a written financial analysis, such proxy advisor shall:

(1)  Concurrently with providing the proxy advisory service,

SENATE BILL No. 375—page 4

include a clear and conspicuous disclosure to each shareholder, or entity or other person acting on behalf of a shareholder, receiving the proxy advisory service that:

(A)   Identifies the proxy advisory service being provided;

(B)   identifies the recommendation or policy at issue;

(C)   states that the proxy advisor has made the recommendation or policy based on a written financial analysis that:

(i)   Analyzes the expected short-term and long-term financial benefits and costs to the company regarding the implementation of the company proposal or proxy proposal;

(ii)   concludes what vote or course of action is most likely to positively affect shareholder value; and

(iii)   explains the methods and processes used to prepare the analysis, including the experience and geographic location of the personnel who formed the recommendation; and

(D)   states that the analysis is available upon request;

(2)   make such analysis available within a reasonable time to any client of the proxy advisory service upon request; and

(3)   provide, concurrently with providing a proxy advisory service under section 3(h)(1)(A) or (1)(B), and amendments thereto, a copy of such analysis to the board of directors of each company that is the subject of the service.

Sec. 5.   (a)(1) A violation of this act is a deceptive and unconscionable act or practice under the Kansas consumer protection act and shall be subject to any and all of the enforcement provisions of the Kansas consumer protection act except as provided in paragraph (2). The attorney general may exercise all investigative powers under the Kansas consumer protection act if the attorney general has reason to believe that a violation has occurred, is occurring or is about to occur.

(2)   Notwithstanding any provision of the Kansas consumer protection act to the contrary, only the attorney general or the attorney general's designee may bring a civil action alleging a violation of the Kansas consumer protection act pursuant to this section. This section shall not be construed as creating or allowing a private right of action under K.S.A. 50-634, and amendments thereto.

(b)   For the purposes of the remedies and penalties provided by the Kansas consumer protection act:

(1)   The person committing the conduct prohibited by this act shall be deemed the supplier, and the person who is the victim of such conduct shall be deemed the consumer; and

(2)   proof of a consumer transaction shall not be required.

Sec. 6.   The provisions of this act are severable. If any portion of the act is declared unconstitutional or invalid, or the application of any portion of the act to any person or circumstance is held unconstitutional or invalid, the invalidity shall not affect other portions of the act that can be given effect without the invalid portion or application, and the applicability of such other portions of the act to any person or circumstance shall remain valid and enforceable.

SENATE BILL No. 375—page 5

Sec. 7.   This act shall take effect and be in force from and after its publication in the statute book.

I hereby certify that the above BILL originated in the SENATE, and passed that body

_____

SENATE concurred in
HOUSE amendments  _____

_____
                                        *President of the Senate.*

_____
                                        *Secretary of the Senate.*

Passed the HOUSE
    as amended  _____

_____
                                        *Speaker of the House.*

_____
                                        *Chief Clerk of the House.*

APPROVED  _____

_____
                                        *Governor.*