# Foster Declaration Exhibit 6

Page 1

KANSAS SENATE COMMITTEE JUDICIARY HEARING

DISCUSSION ON SB 375


TUESDAY, FEBRUARY 10, 2026




https://www.youtube.com/watch?v=o0_HhFIBNws

(Excerpt 59:20 - 1:21:20)

Page 2

A  P  P  E  A  R  A  N  C  E  S

SENATORS:

Kellie Warren (R), District 11

Kenny Titus (R), District 18

Joe Claeys (R), District 27

Mike Argabright (R), District 17

Page 3

R E C O R D I N G

(Excerpt  59:20 - 1:21:20)

SEN. WARREN:  We're going to try to get through the hearing on Senate Bill 375, enacting the Proxy Advisor Transparency Act requiring proxy advisors to make certain disclosures when recommending an action against company management, authorizing the Attorney General to investigate and take enforcement actions against violators, and establishing a private right of action for declaratory judgment or injunctive relief. With that, a brief from the Revisor.

REVISOR:  Thank you, Madam Chair. Senate Bill 375 creates some new provisions of law. Section 1 names the Act. Section 2 provides that the legislature makes particular findings with respect to proxy advisors. I won't go through all those, but you can read them. Section 3 provides for definitions of terms that are used throughout the Act, most notably the definition of proxy advisor and the services they provide, so I would recommend that you read through those.

Section 4 provides that, if a proxy advisor

Page 4

makes a recommendation against company management, or a company -- or a company or proxy proposal, or makes the default recommendation or policy involving votes against such proposal, and such proxy advisor does not make that recommendation based on a written financial analysis, the proxy advisor has certain duties. They have to, concurrently with providing the proxy advisor service, include a clear and conspicuous disclosure to each shareholder that identifies the service being provided, identifies the recommendation or policy at issue, and states that the proxy advisor has made that recommendation without basing that recommendation on a written financial analysis. They also have to provide concurrently with the proxy advisor service defined in subsection (F)(1) or (F)(2) of Section 3, the disclosure that's required under subsection A to the Board of Directors of each company that's the subject of the proxy advisor service. And also while the proxy advisor services are being provided, they have to publicly and conspicuously disclose that the service includes one or more services that include recommendations or policy against company management

Page 5

that are not based on a written financial analysis regarding the impact of those recommendations.

If a proxy advisor does make a written financial analysis, then the advisor has to again concurrently providing with that service, include a clear and conspicuous disclosure to the shareholders that identifies the services being provided, the policy recommendation at issue, and that the proxy advisor has made the recommendation or policy based on a written financial analysis that analyzes the expected financial benefits and costs of the company, concludes what vote or action is most likely to positively affect the shareholder value, and explains the methods and processes used to prepare that written analysis, and it also has to state that the analysis is available on request. They also have to make that analysis available within a reasonable time to any client or proxy advisory service on a request and provide concurrently with the service the same disclosures to the Board of Directors of each company.

Section 5 provides that a violation of this act is a deceptive and unconscionable act or practice

Page 6

under the Kansas Consumer Protection Act. The Attorney General may investigate if the Attorney General has reason to believe that a violation has or will occur. The person committing the conduct prohibited by the act shall be deemed the supplier and the victim deemed the consumer. In addition to the enforcement under the Consumer Protection Act, a person aggrieved may bring an action seeking declaratory judgment or injunctive relief. Not later than seven days after the action is brought the plaintiff would be required to provide written notice to the Attorney General who shall have the right to intervene. An aggrieved party includes a recipient of proxy advisor services, a company that's the subject of proxy advisory services, as defined in subsection (F)(1) or (F)(2) of Section 3, or any shareholder of a company described in subsection (C)(2).

And Section 6 provides a severability clause. And I can take any questions.

SEN. TITUS:  Thank you. Are there any questions for the Revisor? Seeing none, we'll move to proponent testimony. Mr. Du Mee, if you would step

forward and introduce yourself to the committee.

MR. DU MEE:  Thank you, Madam Chair, Members of the Committee. My name is Matthew Du Mee. I work with Fusion Law on behalf of Consumers Defense. And you already have my written testimony. So what I want to do with my three minutes is focus on three points that I've seen in the written testimony submitted by the three opponents of this bill, as I think that'll be more helpful to the committee.

The first point is who the bill covers. All three of the opponents note that the bill could cover a nonprofit. The bill specifically says a proxy advisor provides advice for compensation. So if you're paying for advice, this bill ensures that you get disclosure on whether that advice is based on a written financial analysis. Now in the case of Green America, they apparently do this for free. They just provide advice as a nonprofit. That's fine. They wouldn't be covered. In the case of United Church Funds, one of the other opponents, they are compensated; and, in fact, they have $1.2 billion in assets under management. They need to tell their

Page 8

clients the truth.

The second general topic is what the bill requires. For example, the Taxpayer Protection Alliance, another opponent, says that nonprofits would struggle to produce a written financial analysis for their clients. They don't have to under the bill. Under the bill you only have to disclose whether or not your recommendation is based on a written financial analysis. That's important information. And if it is based on a written financial analysis, then you can make that available.

Similarly, Green America says that the bill requires proxy advisors to give a financial analysis or say that they're not working in the financial interest. That is not true. If you look at the bill, I think Green America's misunderstanding is based on a Texas bill that was passed last year, and it was preliminarily enjoined. The Court had concern about the fact that the Texas bill specifically said certain things were non-financial factors and that, if you were making a recommendation based on those factors, then the proxy advisor had to say that was non-

Page 9

financial. This bill takes a totally different approach to solve the same problem. It specifically just focuses on written financial analysis, which is objective, that's purely factual, the terms are defined. And so as a result, this is a nonpartisan bill. Just last month I was testifying in Indiana and the bill passed out of committee unanimously even though it was bipartisan.

And finally, United Church Funds also says there are extensive disclosure requirements. They aren't extensive. You simply have to say whether or not your advice is based on a written financial analysis.

The last point I have is that the Taxpayer Protection Alliance says it's suspect that this is limited to recommendations against management. But this isn't suspect at all. Management is subject to fiduciary duties. They are making recommendations based on written financial analysis. So if you are going to say, no, management's wrong, then the person that you're giving the recommendation to, they should know whether your advice is also based on a written

Page 10

financial analysis. And I would also note that it's inconsistent that Taxpayer Protection Alliance is saying the disclosure is too burdensome and then also suggesting it should-- it should be applied to more situations.

So those are the bill -- those are the arguments against the bill. I think if you examine the bill closely and look at my written testimony, you'll see those arguments are inaccurate, and they're not based on what the bill actually does. This is a common-sense consumer protection measure that would help people in Kansas. Thank you.

SEN. WARREN:  Thank you. Are there any other proponent conferees wishing to testify? Not seeing any, then we'll invite opponent conferee Noah Tabor's United Church Funds on Webex. Please introduce yourself, and welcome to committee.

MR. TABOR:  Thank you, Chair. Is my technology working okay?

SEN. WARREN:  We can hear and see you, yes.

MR. TABOR:  Wonderful. Thank you, Chair Warren, Members of the Committee. My

Page 11

name's Noah Tabor. I'm the General Counsel for United Church Funds. UCF is the investment partner for the United Church of Christ. We've got about -- UCC's got about 30 churches or so across this Kansas area. In a prior life I was in Topeka as an insurance lobbyist, and I had the full Kansas experience. And I got some wisdom from Jim Denning. I think Senator Longbine almost had me in a Chevy up in Emporia. And, of course, I got my rear end kicked by the Farm Bureau. So I think you know Ad Astra and all that. I had a good time in Topeka a number of years. Thanks for the grace for being virtual today.

Again, UCF's been doing this for about a hundred years. We are active owners. We engage our companies on things that are missionally important for us. This is not transactional work for us. This is ministry work. But the way this bill is written and the definitions that are in Page 3, line 3 and line 6, Proxy Advisor and Proxy Advisor Services, captures the work I do. And I -- UCF votes our proxies. And a big issue, I think, for the committee recommendation is company management on a executive compensation,

Page 12

something my churches care deeply about. If we were to write a blog or a newsletter post talking about how we, UCF, voted our proxies on that executive compensation, is that research? Is that analysis? We're awfully worried it might be. Again, I don't think the intent of this bill is to get faith-based investors like UCF. And many denominations do the work that we do as well. I understand the intent of this bill might be at the Glass Lewis's and the ISS's of the world. Again, these broad definitions capture the work we do, which is, again, not transactional; it's ministerial.

And I appreciate the proponent name-checking us. And actually it's $1.4 billion assets under management. And we are quite worried about this work. And it is onerous on us. And it's closed regime. We are a little nonprofit of 12 souls. And this disclosure regime around this would be incredibly chilling for our work.

So again, Committee, I look forward to being in Topeka next week to talk with you in person, explain more about our work as mission, as ministry.

Page 13

But again, the way this bill is written with the definition so broad, it would get the things that we do in our stewardship, not proxy advisor services. We encourage the Committee to not advance the bill in its current form. There are other states who are looking at this. I think the proponent --

SEN. WARREN: One minute remaining.

MR. TABOR: -- named -- thank you, Chair -- the proponent name-checked Indiana. Yes, Indiana is looking at this bill. And they're considering carving out nonprofits to, again, let this bill go to the effective places it's intended to, the proxy advisors, and let us faith-based investors who have been doing this since the first publicly traded company. The East India Trading Company moons ago had faith-based investors. We've been doing this work a long time. It's stewardship. It's ministry. Madam Chair, thank you for the time and the grace to be virtual today. Happy to answer questions when appropriate.

SEN. WARREN: Thank you. Next, we will hear from Kathy Becker, Responsible Finance Campaign Director, Green America. Please introduce yourself,

Page 14

and welcome to Committee.

MS. BECKER:  Thank you so much. Can you hear me okay?

SEN.  WARREN:  Yes, we can hear and see you.

MS. BECKER:  Okay, great. So thank you so much for the opportunity to testify regarding Senate Bill 375. My name is Kathy Becker. I'm the Responsible Finance Campaign Director at Green America. Founded in 1982, Green America is a national nonprofit that helps consumers and investors harness economic power to create a more just and sustainable world.

So we oppose Senate Bill 375 on two major grounds. First, we feel this bill is biased since it singles out only recommendations that go against company management and does not apply evenly to all proxy recommendations. A similar bill in Texas was found unconstitutional for this reason. And second, it could unreasonably interfere with our ability to provide information to our members and supporters.

So regarding the first objection, it requires advisors to -- proxy advisors to supply a written financial analysis only if the recommendations go

Page 15

against company management. So as far as I know, company management, if they are recommending to vote against a certain shareholder resolution or for it, they don't provide a whole-- you know, they do have fiduciary duties, but they don't provide a whole analysis based on that particular recommendation, which the proxy advisor would have to do. And in Texas, the similar bill that was mentioned, SB 2337, a federal judge put an injunction on that. Because of this, the plaintiffs had argued that it forced them to adopt a State-scripted message that contradicts their own professional judgment and that it singles out speech-based on content. So this was a First Amendment argument, and the Judge did agree with that. And the -- I believe the Attorney General there in Texas has decided not to pursue appealing that.

The other issue in the lawsuit was vagueness, vagueness of definition. We have the same concerns, like, is what we post on our website for members and supporters that's available for anyone to see if they'd go look, is that research and analysis? And there isn't a specific -- we would like to have a

Page 16

specific carve-out for non-profits in here because this bill is actually a little bit broader than the Texas bill, which only applied to Texas companies. This bill would allow anybody who receives this advice, which could be anybody that comes to our website, if they counted that as advice, or just research and analysis, anyone who receives this research and analysis could bring a civil action.

SEN. WARREN:  One minute remaining.

MS. BECKER:  And our second objection -- okay -- that plugs into what we do. So we provide information to our members and supporters. It's basically consumer education about banking, credit cards, insurance, investing, and shareholder advocacy. We explain what shareholder resolutions are, how people with stock can vote on them. A lot of individual investors don't. We're very different from a Glass Lewis or an ISS. They charge for their services; we don't. They're for-profit; we're non-profit. They provide personalized recommendations, which we do not. We don't provide financial advice. We provide information and education, and it's up to

Page 17

people to decide how that applies to them. And they work mainly for institutions; we took -- work mainly for individuals.

So we do ask that you all consider these constitutional concerns about these bills -- you know, this bill and other bills like it and that you carve out non-profits from this. Thank you so much for your time.

SEN. WARREN:  Thank you. Appreciate it. Are there any other persons wishing to testify as opponent on the bill? Not seeing any, then any questions? Senator Claeys.

SENATOR CLAEYS:  Thank you, Madam Chair. And this is actually directed to Kathy Becker. She brought up the very issue that I have concerns about, although I would probably quibble with stating that ours is more broad. It actually appears more narrow to me. We don't explicitly name ESG or DEI, and we don't use vague terms like non-financial factors. But I think you made a really good point about the fact that this is only if it's against management, but not if a proxy advisor rubber-stamps a management proposal without

Page 18

conducting a financial analysis. And I kind of feel like shareholders should know about that too and that that asymmetry does expose us to First Amendment challenge because, you know, it doesn't appear that -- or it does -- it does appear that we would be endorsing a particular viewpoint. So that said, if we were to fix this, if we were to go both for and against management, would you -- would you support this bill? Thank you.

SEN. WARREN:  Kathy Becker, do you want to reintroduce yourself and reply, please? She's still on Webex, but we'll circle back when she gets reconnected.

Senator Argabright.

SEN. ARGABRIGHT:  Thank you, Madam Chair. My question is to Matthew, and it's a little bit similar to Senator Claeys'. A lot of scenarios in your testimony, and then the opponents brought up broad definitions and more clarity on research and analysis. So along the same maybe lines just at you, is would you support more clarity in your -- in your language of this bill?

Page 19

MR. DU MEE:  So, I think the bill is --

SEN. WARREN:  Please go ahead and reintroduce yourself.

MR. DU MEE:  Oh, I'm sorry. Yes. I'm Matthew Du Mee. I'm representing Consumers Defense. I think the bill is clear. For example, proxy advisor clearly says, "means a person who for compensation provides a proxy advisory service." And as Ms. Becker said, they don't do that. They don't provide proxy advisory services for compensation; they just are giving recommendations out for free. So that wouldn't apply to them at all. So I think, if you look at the actual definitions in the bill, it's clear that what -- that this just concerns people who are getting paid for proxy advice and what disclosures they need to make to their clients when they're getting paid for proxy advice. And I think that disclosure's important to clients, whether it's coming from a non-profit or not, because clients have their own fiduciary duties and considerations. So they need to know whether the information is based on a written financial analysis or if it's not when they're going against management,

Page 20

which has its own fiduciary duties already. So when there's that contest, when there's a conflict that's set up, then disclosure needs to be made and needs to be made to clients.

SEN. ARGABRIGHT:  Thank you. I'm not sure that I'm in the same place you are based on the testimony including your own, but thank you.

MR. DU MEE:  All right. Thank you.

SEN. WARREN:  Thank you. Do we have Kathy Becker available to answer the question?

MS. BECKER:  You all hear me now?

SEN. WARREN:  Yes. Kathy Becker, Responsible Finance Campaign Director, Green America. Go ahead.

MS. BECKER:  Yes. The question I heard was regarding -- I guess could the question be repeated? Apologies.

SEN. WARREN:  Sure. Senator Claeys?

SENATOR CLAEYS:  Sure. So you made a very good point about the fact that it doesn't appear that we are being viewpoint neutral if we only -- if we only require the proxy when they're against versus

Page 21

when they're -- when they're for. And of course, that -- if we were to fix that, would you then support the bill?

MS. BECKER:  I'd have to talk to my manager about that, but that would make us more likely to. I think we do -- also do seek the nonprofit carve out because of the definition or the lack of definition of analysis and research. Anyone could say we're supplying analysis and research just because we put information about our shareholder resolutions and what they are on our website. But yes, we do think that it has to be evenly -- you know, it needs to be evenly applied regardless of whether the recommendation supports or opposes management. And that's part of why the Texas law was -- you know, there was an injunction put on that Texas law.

SEN. WARREN:  Thank you. And I'm going to finish with one last question for the proponent. Could you address the symmetry issue that's been raised?

MR. DU MEE:  Certainly. Matthew Du Mee on behalf of Consumers Defense. So the symmetry issue, the reason it's asymmetrical is because the management

Page 22

of a company, they have fiduciary duties under the law. They have to make decisions that they think are in the best interests of the shareholders. And if they don't, they could be held liable for that. So when a proxy advisor is making a recommendation to vote against management and management has their own fiduciary duties, you want something -- you want to know if the proxy advisor's recommendation is coming from their own written financial analysis, whether they're saying, actually, here, we ran the numbers, and we don't think that this management recommendation is going to help the company. And so this bill just requires that disclosure in those situations so that you know, as a client, is this recommendation that I'm getting -- I'm getting two different recommendations here. What are these recommendations based on? And so when there's that conflict, that's when the bill requires the disclosure.

SEN. WARREN:  Thank you. With that then, we are going to -- didn't see other conferees wishing to testify, so we're going to close the hearing on Senate Bill 375 and thank everyone for their attendance

Page 23

today.

And Committee, I do intend to work some bills tomorrow. We'll start off with working bills rather than conclude with them. So please have any amendments ready to bring. And thanks for the late hour today working. And with that then, our meeting is adjourned.

(Whereupon session adjourned.)

Page 24

CERTIFICATE OF TRANSCRIBER

I, RITA PELUSO, do hereby certify that this transcript was prepared from the digital audio recording of the foregoing proceeding, that said transcript is a true and accurate record of the proceedings to the best of my knowledge, skills, and ability; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this was taken; and, further, that I am not a relative or employee of any counsel or attorney employed by the parties hereto, nor financially or otherwise interested in the outcome of this action.

*Rita Peluso*

RITA PELUSO

**[1 - arguments]**

**1**

**1** 3:13 4:15 6:15
**1.2** 7:21
**1.4** 12:14
**10** 1:4
**11** 2:5
**12** 12:17
**17** 2:8
**18** 2:6
**18266** 24:14
**1982** 14:9
**1:21:20** 1:9 3:2

**2**

**2** 3:14 4:15 6:15,17
**2026** 1:4
**2337** 15:8
**27** 2:7

**3**

**3** 3:17 4:15 6:15 11:18,18
**30** 11:4
**375** 1:2 3:4,13 14:7,12 22:22

**4**

**4** 3:22

**5**

**5** 5:21
**59:20** 1:9 3:2

**6**

**6** 6:18 11:18

**a**

**ability** 14:18 24:7
**accurate** 24:5
**act** 3:5,14,18 5:22,22 6:1,5,7
**action** 3:7,10 5:12 6:8,9 16:8 24:8,12
**actions** 3:9
**active** 11:14
**actual** 19:12
**actually** 10:10 12:14 16:2 17:14,17 22:10
**ad** 11:10
**addition** 6:6
**address** 21:19
**adjourned** 23:6 23:7
**adopt** 15:11
**advance** 13:4
**advice** 7:13,14 7:15,18 9:12 9:22 16:5,6,21 19:15,17
**advisor** 3:5,19 3:22 4:4,6,7,11 4:14,18,19 5:3 5:4,9 6:13 7:13 8:22 11:19,19

13:3 15:7 17:22 19:6 22:5
**advisor's** 22:8
**advisors** 3:6,16 8:13 13:12 14:21,21
**advisory** 5:18 6:14 19:8,9
**advocacy** 16:14
**affect** 5:13
**aggrieved** 6:7 6:12
**ago** 13:15
**agree** 15:14
**ahead** 19:2 20:14
**alliance** 8:4 9:15 10:2
**allow** 16:4
**amendment** 15:13 18:3
**amendments** 23:4
**america** 7:17 8:12 13:22 14:8,9 20:14
**america's** 8:16
**analysis** 4:6,13 5:1,4,10,15,15 5:17 7:16 8:5,9 8:10,13 9:3,13 9:19 10:1 12:4 14:22 15:6,21

16:7,8 18:1,19 19:21 21:8,9 22:9
**analyzes** 5:10
**answer** 13:19 20:10
**anybody** 16:4,5
**apologies** 20:17
**apparently** 7:17
**appealing** 15:16
**appear** 18:4,5 20:20
**appears** 17:17
**applied** 10:4 16:3 21:13
**applies** 17:1
**apply** 14:15 19:11
**appreciate** 12:13 17:9
**approach** 9:2
**appropriate** 13:19
**area** 11:4
**argabright** 2:8 18:14,15 20:5
**argued** 15:10
**argument** 15:14
**arguments** 10:7,9

[assets - committee]                                           Page 2

assets  7:22
  12:15
astra  11:10
asymmetrical
  21:22
asymmetry
  18:3
attendance
  22:22
attorney  3:8
  6:1,2,11 15:15
  24:10
audio  24:3
authorizing  3:7
available  5:16
  5:17 8:11
  15:20 20:10
awfully  12:5

**b**

back  18:12
banking  16:13
based  4:5 5:1,9
  7:15 8:8,10,16
  8:21 9:12,19
  9:22 10:10
  12:6 13:13,15
  15:6,13 19:21
  20:6 22:17
basically  16:13
basing  4:12
becker  13:21
  14:2,5,7 16:10
  17:14 18:10

19:8 20:10,11
  20:13,15 21:4
behalf  7:4
  21:21
believe  6:3
  15:15
benefits  5:11
best  22:3 24:6
biased  14:13
big  11:20
bill  3:4,12 7:8
  7:10,11,12,14
  8:2,6,7,12,15
  8:17,19 9:1,6,7
  10:6,7,8,10
  11:17 12:6,9
  13:1,4,10,11
  14:7,12,13,16
  15:8 16:2,3,4
  17:6,11 18:9
  18:22 19:1,6
  19:13 21:3
  22:12,18,22
billion  7:21
  12:14
bills  17:5,6
  23:2,3
bipartisan  9:8
bit  16:2 18:16
blog  12:2
board  4:17
  5:20
brief  3:11

bring  6:7 16:8
  23:5
broad  12:10
  13:2 17:17
  18:18
broader  16:2
brought  6:10
  17:14 18:18
burdensome
  10:3
bureau  11:10

**c**

c  2:1 3:1 6:17
campaign
  13:21 14:8
  20:13
capture  12:10
captures  11:19
cards  16:14
care  12:1
carve  16:1 17:6
  21:6
carving  13:10
case  7:16,19
certain  3:6 4:6
  8:19 15:3
certainly  21:20
certificate  24:1
certify  24:2
chair  3:12 7:2
  10:18,22 13:8
  13:17 17:13
  18:15

challenge  18:4
charge  16:18
checked  13:9
checking  12:13
chevy  11:8
chilling  12:19
christ  11:3
church  7:19 9:9
  10:16 11:2,3
churches  11:4
  12:1
circle  18:12
civil  16:8
claeys  2:7
  17:12,13 18:17
  20:18,19
clarity  18:19,21
clause  6:18
clear  4:8 5:6
  19:6,13
clearly  19:6
client  5:18
  22:14
clients  8:1,6
  19:16,18,19
  20:4
close  22:21
closed  12:17
closely  10:8
comes  16:5
coming  19:18
  22:8
committee  1:1
  7:1,3,9 9:7

10:17,22 11:21 12:20 13:4 14:1 23:2

**committing** 6:4

**common** 10:11

**companies** 11:15 16:3

**company** 3:7 4:1,2,2,17,22 5:11,20 6:13 6:16 11:22 13:14,15 14:15 15:1,2 22:1,12

**compensated** 7:21

**compensation** 7:13 11:22 12:4 19:7,10

**concern** 8:18

**concerns** 15:18 17:5,15 19:14

**conclude** 23:4

**concludes** 5:12

**concurrently** 4:7,14 5:5,19

**conduct** 6:4

**conducting** 18:1

**conferee** 10:15

**conferees** 10:14 22:20

**conflict** 20:2 22:17

**consider** 17:4

**considerations** 19:20

**considering** 13:10

**conspicuous** 4:8 5:6

**conspicuously** 4:20

**constitutional** 17:5

**consumer** 6:1,6 6:7 10:11 16:13

**consumers** 7:4 14:10 19:5 21:21

**content** 15:13

**contest** 20:2

**contradicts** 15:11

**costs** 5:11

**counsel** 11:1 24:7,10

**counted** 16:6

**course** 11:9 21:1

**court** 8:18

**cover** 7:11

**covered** 7:19

**covers** 7:10

**create** 14:11

**creates** 3:13

**credit** 16:13

**current** 13:5

**d**

**d** 3:1

**days** 6:9

**deceptive** 5:22

**decide** 17:1

**decided** 15:16

**decisions** 22:2

**declaratory** 3:10 6:8

**deemed** 6:5,5

**deeply** 12:1

**default** 4:3

**defense** 7:4 19:5 21:21

**defined** 4:14 6:14 9:5

**definition** 3:19 13:2 15:18 21:7,7

**definitions** 3:17 11:18 12:10 18:19 19:13

**dei** 17:18

**denning** 11:7

**denominations** 12:7

**described** 6:16

**different** 9:1 16:17 22:15

**digital** 24:3

**directed** 17:14

**director** 13:22 14:8 20:13

**directors** 4:17 5:20

**disclose** 4:20 8:7

**disclosure** 4:8 4:16 5:6 7:15 9:10 10:3 12:18 20:3 22:13,18

**disclosure's** 19:17

**disclosures** 3:6 5:20 19:15

**discussion** 1:2

**district** 2:5,6,7 2:8

**doing** 11:13 13:13,16

**du** 6:22 7:2,3 19:1,4,5 20:8 21:20,20

**duties** 4:6 9:18 15:5 19:19 20:1 22:1,7

**e**

**e** 2:1,1 3:1

**east** 13:14

**economic** 14:10

**education** 16:13,22

[effective - hereto]                                                      Page 4

| | | | |
|---|---|---|---|
| **effective** 13:12 | **f** | **fine** 7:18 | **go** 3:16 13:11 |
| **employed** 24:8 | | **finish** 21:18 | 14:14,22 15:21 |
| 24:11 | **f** 4:15,15 6:15 | **first** 7:10 13:14 | 18:7 19:2 |
| **employee** 24:10 | 6:15 | 14:13,20 15:13 | 20:14 |
| **emporia** 11:9 | **fact** 7:21 8:19 | 18:3 | **going** 3:3 9:20 |
| **enacting** 3:4 | 17:20 20:20 | **fix** 18:7 21:2 | 19:22 21:17 |
| **encourage** 13:4 | **factors** 8:20,21 | **focus** 7:6 | 22:12,20,21 |
| **endorsing** 18:6 | 17:19 | **focuses** 9:3 | **good** 11:11 |
| **enforcement** | **factual** 9:4 | **forced** 15:10 | 17:20 20:20 |
| 3:8 6:6 | **faith** 12:6 | **foregoing** 24:4 | **grace** 11:12 |
| **engage** 11:14 | 13:13,15 | **form** 13:5 | 13:18 |
| **enjoined** 8:18 | **far** 15:1 | **forward** 7:1 | **great** 14:5 |
| **ensures** 7:14 | **farm** 11:10 | 12:20 | **green** 7:16 8:12 |
| **esg** 17:18 | **february** 1:4 | **found** 14:17 | 8:16 13:22 |
| **establishing** | **federal** 15:9 | **founded** 14:8 | 14:8,9 20:13 |
| 3:9 | **feel** 14:13 18:1 | **free** 7:17 19:11 | **grounds** 14:13 |
| **evenly** 14:15 | **fiduciary** 9:18 | **full** 11:6 | **guess** 20:16 |
| 21:12,12 | 15:5 19:19 | **funds** 7:20 9:9 | **h** |
| **examine** 10:7 | 20:1 22:1,7 | 10:16 11:2 | |
| **example** 8:3 | **finally** 9:9 | **further** 24:9 | **happy** 13:19 |
| 19:6 | **finance** 13:21 | **fusion** 7:4 | **harness** 14:10 |
| **excerpt** 1:9 3:2 | 14:8 20:13 | **g** | **hear** 10:20 |
| **executive** 11:22 | **financial** 4:5,13 | | 13:20 14:2,4 |
| 12:3 | 5:1,4,10,11 | **g** 3:1 | 20:11 |
| **expected** 5:11 | 7:16 8:5,9,10 | **general** 3:8 6:2 | **heard** 20:15 |
| **experience** 11:6 | 8:13,14,20 9:1 | 6:2,11 8:2 11:1 | **hearing** 1:1 3:4 |
| **explain** 12:22 | 9:3,12,19 10:1 | 15:15 | 22:21 |
| 16:15 | 14:22 16:21 | **getting** 19:14 | **held** 22:4 |
| **explains** 5:13 | 17:19 18:1 | 19:16 22:15,15 | **help** 10:12 |
| **explicitly** 17:18 | 19:21 22:9 | **give** 8:13 | 22:12 |
| **expose** 18:3 | **financially** | **giving** 9:21 | **helpful** 7:9 |
| **extensive** 9:10 | 24:11 | 19:10 | **helps** 14:9 |
| 9:11 | **findings** 3:15 | **glass** 12:9 | **hereto** 24:11 |
| | | 16:18 | |

**hhfibnws** 1:8
**hour** 23:5
**https** 1:8
**hundred** 11:14

### i

**identifies** 4:9
  4:10 5:7
**impact** 5:2
**important** 8:9
  11:15 19:17
**inaccurate** 10:9
**include** 4:8,21
  5:5
**includes** 4:21
  6:12
**including** 20:7
**inconsistent**
  10:2
**incredibly**
  12:19
**india** 13:15
**indiana** 9:6
  13:9,9
**individual**
  16:17
**individuals**
  17:3
**information**
  8:9 14:19
  16:12,22 19:21
  21:10
**injunction** 15:9
  21:15

**injunctive** 3:10
  6:8
**institutions**
  17:2
**insurance** 11:5
  16:14
**intend** 23:2
**intended** 13:12
**intent** 12:6,8
**interest** 8:15
**interested**
  24:12
**interests** 22:3
**interfere** 14:18
**intervene** 6:12
**introduce** 7:1
  10:16 13:22
**investigate** 3:8
  6:2
**investing** 16:14
**investment**
  11:2
**investors** 12:7
  13:13,16 14:10
  16:17
**invite** 10:15
**involving** 4:3
**iss** 16:18
**iss's** 12:9
**issue** 4:11 5:8
  11:21 15:17
  17:15 21:19,21

### j

**jim** 11:7
**joe** 2:7
**judge** 15:9,14
**judgment** 3:10
  6:8 15:12
**judiciary** 1:1

### k

**kansas** 1:1 6:1
  10:12 11:4,6
**kathy** 13:21
  14:7 17:14
  18:10 20:9,12
**kellie** 2:5
**kenny** 2:6
**kicked** 11:9
**kind** 18:1
**know** 9:22
  11:10 15:1,4
  17:5 18:2,4
  19:20 21:12,15
  22:8,14
**knowledge**
  24:6

### l

**lack** 21:7
**language** 18:21
**late** 23:5
**law** 3:13 7:4
  21:15,16 22:2
**lawsuit** 15:17

**legislature** 3:14
**lewis** 16:18
**lewis's** 12:9
**liable** 22:4
**life** 11:5
**likely** 5:12 21:5
**limited** 9:16
**line** 11:18,18
**lines** 18:20
**little** 12:17 16:2
  18:16
**lobbyist** 11:5
**long** 13:16
**longbine** 11:8
**look** 8:15 10:8
  12:20 15:21
  19:12
**looking** 13:5,10
**lot** 16:16 18:17

### m

**madam** 3:12
  7:2 13:17
  17:13 18:15
**made** 4:11 5:9
  17:20 20:3,4
  20:19
**major** 14:12
**make** 3:6 4:5
  5:3,16 8:11
  19:15 21:5
  22:2
**makes** 3:15 4:1
  4:2

**making** 8:21 9:18 22:5
**management** 3:7 4:1,22 7:22 9:16,17 11:22 12:15 14:15 15:1,2 17:21 17:22 18:8 19:22 21:14,22 22:6,6,11
**management's** 9:20
**manager** 21:4
**matthew** 7:3 18:16 19:4 21:20
**means** 19:7
**measure** 10:11
**mee** 6:22 7:2,3 19:1,4,5 20:8 21:20,20
**meeting** 23:6
**members** 7:2 10:22 14:19 15:19 16:12
**mentioned** 15:8
**message** 15:11
**methods** 5:14
**mike** 2:8
**ministerial** 12:12
**ministry** 11:17 12:22 13:17

**minute** 13:7 16:9
**minutes** 7:6
**mission** 12:22
**missionally** 11:15
**misunderstan...** 8:16
**month** 9:6
**moons** 13:15
**move** 6:21

**n**

**n** 2:1 3:1
**name** 7:3 12:13 13:9 14:7 17:18
**name's** 11:1
**named** 13:8
**names** 3:14
**narrow** 17:17
**national** 14:9
**need** 7:22 19:15 19:20
**needs** 20:3,3 21:12
**neither** 24:7
**neutral** 20:21
**new** 3:13
**newsletter** 12:2
**noah** 10:15 11:1
**non** 8:20,22 16:1,19 17:7

17:19 19:18
**nonpartisan** 9:5
**nonprofit** 7:12 7:18 12:17 14:9 21:6
**nonprofits** 8:4 13:11
**notably** 3:18
**note** 7:11 10:1
**notice** 6:11
**number** 11:11
**numbers** 22:10

**o**

**o** 3:1
**o0** 1:8
**objection** 14:20 16:10
**objective** 9:4
**occur** 6:3
**oh** 19:4
**okay** 10:19 14:3,5 16:10
**onerous** 12:16
**opponent** 8:4 10:15 17:10
**opponents** 7:8 7:11,20 18:18
**opportunity** 14:6
**oppose** 14:12
**opposes** 21:14

**outcome** 24:12
**own** 15:12 19:19 20:1,7 22:6,9
**owners** 11:14

**p**

**p** 2:1,1
**page** 11:18
**paid** 19:14,16
**part** 21:14
**particular** 3:15 15:6 18:6
**parties** 24:8,11
**partner** 11:2
**party** 6:12
**passed** 8:17 9:7
**paying** 7:14
**peluso** 24:2,15
**people** 10:12 16:16 17:1 19:14
**person** 6:4,7 9:20 12:21 19:7
**personalized** 16:20
**persons** 17:10
**place** 20:6
**places** 13:12
**plaintiff** 6:10
**plaintiffs** 15:10
**please** 10:16 13:22 18:11

**[please - reply]**                                                           Page 7

19:2 23:4
**plugs**  16:11
**point**  7:10 9:14
   17:20 20:20
**points**  7:6
**policy**  4:3,10
   4:22 5:8,9
**positively**  5:13
**post**  12:2 15:19
**power**  14:10
**practice**  5:22
**preliminarily**
   8:18
**prepare**  5:14
**prepared**  24:3
**prior**  11:5
**private**  3:9
**probably**  17:16
**problem**  9:2
**proceeding**
   24:4
**proceedings**
   24:6
**processes**  5:14
**produce**  8:5
**professional**
   15:12
**profit**  16:19,20
   19:18
**profits**  16:1
   17:7
**prohibited**  6:4
**proponent**  6:22
   10:14 12:13

13:6,9 21:18
**proposal**  4:2,4
   17:22
**protection**  6:1
   6:7 8:3 9:15
   10:2,11
**provide**  3:20
   4:13 5:19 6:10
   7:18 14:19
   15:4,5 16:11
   16:20,21,22
   19:9
**provided**  4:10
   4:19 5:7
**provides**  3:14
   3:17,22 5:21
   6:18 7:13 19:7
**providing**  4:7
   5:5
**provisions**  3:13
**proxies**  11:20
   12:3
**proxy**  3:5,5,15
   3:19,22 4:2,4,6
   4:7,11,14,18,18
   5:3,8,18 6:13
   6:14 7:12 8:13
   8:22 11:19,19
   13:3,12 14:16
   14:21 15:7
   17:21 19:6,8,9
   19:15,16 20:22
   22:5,8

**publicly**  4:20
   13:14
**purely**  9:4
**pursue**  15:16
**put**  15:9 21:9
   21:16

**q**

**question**  18:16
   20:10,15,16
   21:18
**questions**  6:19
   6:21 13:19
   17:12
**quibble**  17:16
**quite**  12:15

**r**

**r**  2:1,5,6,7,8 3:1
   3:1
**raised**  21:19
**ran**  22:10
**rather**  23:3
**read**  3:17,20
**ready**  23:5
**really**  17:20
**rear**  11:9
**reason**  6:3
   14:17 21:22
**reasonable**
   5:17
**receives**  16:4,7
**recipient**  6:13
**recommend**
   3:20

**recommendat...**
   4:1,3,5,10,12
   4:12 5:8,9 8:8
   8:21 9:21
   11:21 15:6
   21:13 22:5,8
   22:11,14
**recommendat...**
   4:22 5:2 9:16
   9:18 14:14,16
   14:22 16:20
   19:11 22:16,16
**recommending**
   3:6 15:2
**reconnected**
   18:13
**record**  24:5
**recording**  24:4
**regarding**  5:2
   14:6,20 20:16
**regardless**
   21:13
**regime**  12:17
   12:18
**reintroduce**
   18:11 19:2
**related**  24:7
**relative**  24:10
**relief**  3:11 6:9
**remaining**  13:7
   16:9
**repeated**  20:16
**reply**  18:11

**[representing - suspect]** Page 8

| | | | |
|---|---|---|---|
| **representing** 19:5 | **says** 7:12 8:4 8:12 9:9,15 19:7 | **sense** 10:11 | **specific** 15:22 16:1 |
| **request** 5:16,18 | **sb** 1:2 15:8 | **service** 4:8,9,14 4:18,20 5:5,18 5:19 19:8 | **specifically** 7:12 8:19 9:2 |
| **require** 20:22 | **scenarios** 18:17 | **services** 3:19 4:19,21 5:7 6:13,14 11:19 13:3 16:19 19:10 | **speech** 15:13 |
| **required** 4:16 6:10 | **scripted** 15:11 | | **stamps** 17:22 |
| **requirements** 9:10 | **second** 8:2 14:17 16:10 | | **start** 23:3 |
| **requires** 8:3,13 14:20 22:13,18 | **section** 3:13,14 3:17,22 4:15 5:21 6:15,18 | **session** 23:7 | **state** 5:15 15:11 |
| **requiring** 3:5 | **see** 10:9,20 14:4 15:20 22:20 | **set** 20:3 | **states** 4:11 13:5 |
| **research** 12:4 15:21 16:7,8 18:19 21:8,9 | | **seven** 6:9 | **stating** 17:16 |
| | | **severability** 6:18 | **step** 6:22 |
| **resolution** 15:3 | **seeing** 6:21 10:14 17:11 | **shareholder** 4:9 5:13 6:16 15:3 16:14,15 21:10 | **stewardship** 13:3,17 |
| **resolutions** 16:15 21:10 | **seek** 21:6 | | **stock** 16:16 |
| **respect** 3:15 | **seeking** 6:8 | | **struggle** 8:5 |
| **responsible** 13:21 14:7 20:13 | **seen** 7:7 | **shareholders** 5:6 18:2 22:3 | **subject** 4:17 6:14 9:17 |
| | **sen** 3:3 6:20 10:13,20 13:7 13:20 14:4 16:9 17:9 18:10,15 19:2 20:5,9,12,18 21:17 22:19 | **signature** 24:14 | **submitted** 7:7 |
| **result** 9:5 | | **similar** 14:16 15:8 18:16 | **subsection** 4:15 4:16 6:15,16 |
| **revisor** 3:11,12 6:21 | | **similarly** 8:12 | **suggesting** 10:4 |
| | | **simply** 9:11 | **supplier** 6:5 |
| **right** 3:10 6:12 20:8 | | **singles** 14:14 15:12 | **supply** 14:21 |
| | **senate** 1:1 3:4 3:12 14:6,12 22:21 | **situations** 10:5 22:13 | **supplying** 21:9 |
| **rita** 24:2,15 | | | **support** 18:8 18:21 21:2 |
| **rubber** 17:22 | **senator** 11:8 17:12,13 18:14 18:17 20:18,19 | **skills** 24:6 | **supporters** 14:19 15:20 16:12 |
| **s** | | **solve** 9:2 | |
| **s** 2:1 | | **sorry** 19:4 | **supports** 21:14 |
| **saying** 10:3 22:10 | **senators** 2:3 | **souls** 12:17 | **sure** 20:5,18,19 |
| | | | **suspect** 9:15,17 |

**sustainable** 14:11

**symmetry** 21:19,21

**t**

**tabor** 10:18,21 11:1 13:8

**tabor's** 10:15

**take** 3:8 6:19

**taken** 24:9

**takes** 9:1

**talk** 12:21 21:4

**talking** 12:2

**taxpayer** 8:3 9:14 10:2

**technology** 10:19

**tell** 7:22

**terms** 3:17 9:4 17:19

**testify** 10:14 14:6 17:10 22:21

**testifying** 9:6

**testimony** 6:22 7:5,7 10:8 18:18 20:7

**texas** 8:17,19 14:16 15:8,15 16:3,3 21:15 21:16

**thank** 3:12 6:20 7:2 10:12,13

10:18,21 13:8 13:17,20 14:2 14:5 17:7,9,13 18:9,15 20:5,7 20:8,9 21:17 22:19,22

**thanks** 11:12 23:5

**things** 8:20 11:15 13:2

**think** 7:8 8:16 10:7 11:7,10 11:21 12:6 13:6 17:19 19:1,5,12,17 21:6,11 22:2 22:11

**three** 7:6,6,8,11

**time** 5:17 11:11 13:16,18 17:8

**titus** 2:6 6:20

**today** 11:12 13:18 23:1,5

**tomorrow** 23:3

**took** 17:2

**topeka** 11:5,11 12:21

**topic** 8:2

**totally** 9:1

**traded** 13:14

**trading** 13:15

**transactional** 11:16 12:11

**transcriber** 24:1

**transcript** 24:3 24:5

**transparency** 3:5

**true** 8:15 24:5

**truth** 8:1

**try** 3:3

**tuesday** 1:4

**two** 14:12 22:15

**u**

**ucc's** 11:3

**ucf** 11:2,20 12:3,7

**ucf's** 11:13

**unanimously** 9:7

**unconsciona...** 5:22

**unconstitutio...** 14:17

**under** 4:16 6:1 6:6 7:22 8:6,7 12:15 22:1

**understand** 12:8

**united** 7:19 9:9 10:16 11:1,3

**unreasonably** 14:18

**use** 17:18

**used** 3:18 5:14

**v**

**v** 1:8

**vague** 17:19

**vagueness** 15:17,18

**value** 5:13

**versus** 20:22

**victim** 6:5

**viewpoint** 18:6 20:21

**violation** 5:21 6:3

**violators** 3:9

**virtual** 11:12 13:18

**vote** 5:12 15:2 16:16 22:5

**voted** 12:3

**votes** 4:3 11:20

**w**

**want** 7:5 18:10 22:7,7

**warren** 2:5 3:3 10:13,20,22 13:7,20 14:4 16:9 17:9 18:10 19:2 20:9,12,18 21:17 22:19

**watch** 1:8

**[way - years]**                                              Page 10

| | |
|---|---|
| **way**   11:17 13:1 | 22:9 |
| **we've**   11:3 | **wrong**   9:20 |
| 13:16 | **www.youtub...** |
| **webex**   10:16 | 1:8 |
| 18:12 | **y** |
| **website**   15:19 | |
| 16:6 21:11 | **year**   8:17 |
| **week**   12:21 | **years**   11:11,14 |
| **welcome**   10:17 | |
| 14:1 | |
| **wisdom**   11:7 | |
| **wishing**   10:14 | |
| 17:10 22:20 | |
| **wonderful** | |
| 10:21 | |
| **work**   7:3 11:16 | |
| 11:17,20 12:7 | |
| 12:11,16,19,22 | |
| 13:16 17:2,2 | |
| 23:2 | |
| **working**   8:14 | |
| 10:19 23:3,6 | |
| **world**   12:10 | |
| 14:11 | |
| **worried**   12:5 | |
| 12:15 | |
| **write**   12:2 | |
| **written**   4:5,13 | |
| 5:1,3,10,14 | |
| 6:11 7:5,7,16 | |
| 8:5,8,10 9:3,12 | |
| 9:19,22 10:8 | |
| 11:17 13:1 | |
| 14:21 19:21 | |