# Foster Declaration Exhibit 8

Page 1

KANSAS HOUSE COMMITTEE ON FINANCIAL INSTITUTIONS AND

PENSIONS

DISCUSSION ON SB 375

Wednesday, March 4, 2026

Recording Address:

https://www.youtube.com/watch?v=QqiCsR_T_cU

(Excerpt 42:20 - 57:40)

Page 2

A P P E A R A N C E S

REPRESENTATIVES:

Nick Hoheisel (R), District 97

Rui Xu (D), District 25

Lauren Bohi (R), District 15

Gary White (R), District 115

Page 3

R E C O R D I N G

REP. HOHEISEL:  Seeing none, we will close that hearing, and we will move on to SB 375. Jason, for one final time today.

MR. THOMPSON:  Thank you again, Mr. Chairman. Jason Thompson, Office of the Revisor of Statutes. SB 375 comes to you requested by Senator Warren in the Committee on Judiciary, and it went through Judiciary Committee on the Senate side. On final action in the House, it passed 31-9. The version you should have that's most current is as amended by Senate Committee of the Whole, and I will describe a couple of the Senate Committee of the Whole amendments as I go through the bill brief and try to keep it short. I know you've got conferees who are directly involved in these matters and have the direct legal experience that you're going to need to answer some of the questions. So I'll give you the overview and help you find things in the bill.

The bill overall enacts what's called the Proxy Advisor Transparency Act. And overall it kind of requires these advisors to make certain disclosures

Page 4

when recommending an action against company management, and it also authorizes the Attorney General to investigate and take enforcement actions against anyone who violates this act.

The name of the act is in Section 1. Some legislative findings are in Section 2. And then Section 3 is where the definitions are located. I highlighted Proxy Advisor and Proxy Advisor -- Proxy Advisory Service in the bill brief. Proxy Advisor is a person who, for compensation, provides a Proxy Advisory Service to shareholders of a company or to other persons with authority to vote on behalf of the shareholders of a company. And Proxy Advisory Service is any of the listed services that are provided in connection with or in relation to a company or are provided to any person in this State. And those include advice or recommendation on how to vote on certain proposals, research and analysis on certain proposals, and developments of proxy voting recommendations or policies. So that's kind of the universe of issues you're dealing with in the definitions.

Page 5

I do note the Senate Committee of the Whole amended the definition of Proxy Advisory Service to provide an exception. And that exception is to exclude charitable organizations, if the organization's gross annual revenue from those services is less than $500,000 or, if they have multiple affiliated groups, the total from all of those is less than $500,000. So charitable services that are providing these -- charitable organizations that are providing these services are exempt under the Senate Committee of the Whole amendment.

Section 4 then gets into the real sort of requirements of the bill, and that is these disclosures that are required to be made when a proxy advisory -- when a proxy advisor makes a recommendation against company management on company or proxy proposals or makes a default recommendation or policy involving votes against those proposals. So there's kind of two different tracks in Section 4. One is if you do a specific analysis of the proposal, there's certain notices that need to be provided, and the other is if you don't do a specific analysis -- or

Page 6

an analysis that meets the statutory requirements anyway -- then there's a different set of notices that have to be given and posted on the website, et cetera. And I won't get into the details, but it's -- Section 4 is really where all the requirements are and the notifications and the -- and the duties that arise, if you're performing these services.

Section 5 is then where you have the violations of the Act. They are deemed deceptive and unconscionable under the Consumer Protection Act. That means they're subject to all the remedies and penalties under that Act, including civil fines and other items. The Attorney General may investigate these claims, and they are the only one given that authority under this section. The Senate Committee of the Whole did amend the bill to remove a provision that would have given a private right of action for declaratory judgment or injunctive relief. That's still in the short title of the bill, so I didn't want that to be missed. It's been removed from the long title of the bill, like the bill itself and from the section, but it still shows up on the short title on

the website, so we're going to get that corrected. So there is no private right of action, and there's also no private right of action under the Consumer Protection Act. Normally there is, but there's a specific provision that says that doesn't apply. Only the Attorney General will be authorized to bring violations of this act under the Consumer Protection Act.

And then the last section is just a standard severability clause that I would note is there. And the last thing is it would take effect on July 1st, if adopted. Hopefully that gets you started.

REP. HOHEISEL:  Thank you, Jason. Committee, do we have any questions for Jason? I see none. Thank you, sir.

All righty. We're going to call up our only proponent today. That's going to be Beau Roysden of Fusion Law, on behalf of Consumers Defense. Beau, welcome to Committee, sir.

MR. ROYSDEN:  Can you guys hear me okay? First of all, thank you very much for the opportunity to be here. My background is I worked in

Page 8

the Arizona Attorney General's Office for approximately seven years. A lot of my responsibilities involve consumer protection. That's my background. I'm now an attorney in private practice.

This is a very important bill, but it's also a very targeted bill. And I think that's an important thing to understand. The proxy advisory industry was kind of in the background for many years. It was created decades ago because the federal government recognized that, as part of owning shares, you have the right to vote shares, and that's a valuable part of the ownership. So when you have funds that everyday people, retirees, invest in, those funds have to vote those shares on many shareholder proposals that come up every year. There's thousands of them. It's not practical for even a medium-sized fund to do its own analysis. So what they do is they outsource that to professional firms who charge a fee, and for compensation they provide advice on how to vote.

This bill makes a very narrow but important disclosure requirement for those firms. And so for

Page 9

those firms that are professional proxy advisors, if they are going to make a recommendation on a proxy proposal that's against the recommendation of the owned company's board of directors, they simply have to disclose one way or another essentially whether that recommendation was based on a written financial analysis. And to make the -- the intent of the bill is to make it factual and non-controversial. Subsection A of 4 says, if you do not do a written financial analysis, you disclose that. Subsection B says, if you do do a written financial analysis, you disclose that. And to be extra clear, it explains exactly what the intent is in that term. And it's three things. Did it analyze the expected short-term and long-term financial benefits and costs from the proposal? Two, did it conclude what vote or course of action is the most likely to positively affect shareholder value? And three, did it explain the methods and processes used to prepare that analysis?

        And in my mind, I actually think the best illustration of what we're talking about is actually the Treasurer's testimony just a few

Page 10

minutes ago. He came up here, and almost like central casting of the kind of financial advisor you would want he said, here's the frontier of risk and return. I looked at that. I think this type of investment has this benefit, and that's how I base my analysis. It's really that simple.

And proxy advisor -- what's important to understand is this bill doesn't require the proxy advisors to do that. It just requires them to explain in clear terms either they are doing it or they aren't. And they say, well, for some things it's impractical. For example, if somebody's not showing up to their board meetings and we vote -- we recommend voting them off the board, we can't really do a financial analysis of why that's good or bad. Whether that's true or not, that's fine. That's their position. They should explain that to their customers and the investors in the fund. And it's really that simple. It's simply a factual disclosure to help everyday investors understand the funds they invest in when they're voting yes or no on these various proxy proposals, is that being based on a written financial

Page 11

analysis similar to what the Treasurer presented, or is it being based on something else, a rule of thumb, an industry practice, you know, best practices, that sort of thing. And so that's really the intent.

It's a very simple bill. It's a very narrow bill, but it's a very important bill because it's a consumer protection mechanism. The Kansas Attorney General has an excellent consumer protection staff. It gives him the ability to investigate those sorts of violations, take any appropriate action, and to just make sure that investors understand how their shares are being voted.

So with that, I'm happy to answer questions, or I'm happy to wait until the end if there are any questions.

REP. HOHEISEL:  Yeah. No. You're the only proponent today, so we'll do questions now. First off, before I get to Representative Xu, I'm reading Glass Lewis's opponent written testimony, which I would encourage everybody to take a look at. They reference a similar legislation in Texas passing last year that's been enjoined by a Federal Court. And

Page 12

then State of Missouri looks like was forced to cover legal fees on its anti-ESG bill, as they call it. Can you address either of those pieces of legislation?

MR. ROYSDEN:  Yes, Mr. Chair, and thank you for the question. So, let me take the Texas one first. The Texas bill was a -- had a lot of different terms compared to this bill. This bill is a much narrower disclosure. It's also a much more specific disclosure in that it requires the disclosure itself to explain what is meant by written financial analysis. It's not subject matter based. It's not only on ESG, or DEI, or whatever. It's any time the recommendation is contrary to the company board's recommendation. And the reason for that is to actually give more valuable information to investors. There's thousands of proposals, like I said. The number of ones where the proxy advisors vote -- recommend against company management is a small subset. And so the idea is, if those company boards already have fiduciary duties and they make a recommendation, you know, support this proposal, oppose this proposal, and the proxy advisor disagrees with that, in that narrow universe then they disclose,

Page 13

you know, one, two, and three, we either did this or we didn't do that. So I think that's what distinguishes it.

The Missouri case, that was a much broader bill. It had a lot of different issues involving ERISA, involving Investment Advisor Act preemption. That decision was not appealed to the Eighth Circuit. Whether that was the reasons why, I don't want to speculate. But I think that, if you actually look at that decision, that judge did a lot of things that were kind of novel. I think the idea is this is a much narrower bill. So in a lot of ways I think this bill is informed by those decisions and tries to do something very narrow but still very important that's focused on consumer protection, which is fundamentally the States -- the States retain their right to protect their investors from fraudulent practices. And this is a -- simply a very simple disclosure of, you know, factual and non-controversial information to carry out that State function. And that's what I think distinguishes it.

REP. HOHEISEL:  I appreciate those answers.

Page 14

Ranking Chair.

REP. XU:  Thank you, Mr. Chair. Can you give me a couple examples on where this would have happened in Kansas that maybe a proxy advisor went against the advice of the board?

MR. ROYSDEN:  Yeah. It happened a lot in the 2021 timeframe. So, one example is energy companies, big oil companies. There was a huge kind of movement that was kind of started by activists that owned very small amounts of these companies. But, for example, the Exxon board in 2021 -- in May of 2021, they voted off two of the Directors based on Exxon not adopting climate change. Now whether that's the right decision or not, this bill takes no position. But what it does is it simply says, when you made that recommendation to vote off members of this board, was that based on a written financial analysis, yes or no?

How does that affect Kansas? Obviously, Exxon's not headquartered in Kansas, but many investors in Kansas own Exxon stock. They either own it because they invest in a fund that actively chooses that or they invest in a fund that passively owns, you

Page 15

know, a little bit of every company in the S&P 500. So that's how it would affect -- that's how it'd everyday investors in Kansas.

REP. HOHEISEL:  Committee, do we have any further questions? Representative Bohi.

REP. BOHI:  Thank you, Mr. Chair.

Thank you for your presentation today. And I am very excited that this is a very narrow, specific, tailored bill. It more comes to the central casting comment that you made earlier. And I just wanted to bring everyone's attention to the Treasurer's website because he also has lots of informational videos on there regarding some of the different aspects. So he is truly central casting not just for disclosures, but also for the different aspects of the Treasurer's Office.

REP. HOHEISEL:  I have viewed those videos, and I love our State Treasurer, but I don't think he's winning any Academy Awards from the videos. I will say that.

Committee, do we have any further questions? Representative White, awful chatty today there,

Page 16

Representative.

MR. WHITE:  Oh, fascinating stuff. Thank you, Mr. Chair.

I don't quite understand why -- if I was to hire a proxy advisor, I would do my own due diligence. Why does the State need to come in and mandatorily do whatever this bill does?

MR. ROYSDEN:  That's a great question. And the reason is that most people don't own enough stocks that it makes sense for them to vote. You know, I know in my house in the mail every year my wife owns one or two stocks where we get like, you can vote. The way it works for most people is you invest in a fund, like a Vanguard fund, or a BlackRock fund, or whatever. Those funds are the ones that hire the proxy advisors, so it's kind of one degree removed. So what this disclosure does is for those investors who are interested, or even like financial advisors, they can look -- you know, that's probably the more realistic scenario -- and they can tell their clients, okay, this fund that you might invest, you know, your $10,000 in they're going to use this proxy advisor.

Page 17

This proxy advisor votes the shares based on economic or not based on written -- you know, based on written financial analysis, not based on that. So it essentially provides kind of baseline information that then consumers can use to make that decision. But they aren't really hiring these companies directly. And that's why there needs to be kind of a disclosure, and then also an ability for the Attorney General's Office, you know, to make sure the disclosure's happening. It's kind of like an intermediary, you know, like two steps removed from the investor. And so it's simply to give that information that then an investor can use to pick fund A verse fund B, if that makes sense.

MR. WHITE:  Yes, it does. Thank you. Thank you, Mr. Chair.

REP. HOHEISEL:  Committee, any further questions? I see none. Thank you so much, sir.

MR. ROYSDEN:  Thank you.

REP. HOHEISEL:  All righty. That's all I have for in-person proponents, opponents, or neutrals. Does anybody from the public like to speak on SB 375?

Page 18

Seeing none. I do have several written proponents, a neutral from Kelly VanZwoll with KBA, and then one written opponent that I referenced earlier on behalf of Glass Lewis. So definitely take a look at that testimony. And we're going to go ahead and close the hearing on SB 375. We've got plenty of time left. So we're going to start some final action on bills previously heard.

(Whereupon, discussion on SB 375 concluded.)

Page 19

CERTIFICATE OF TRANSCRIBER

I, RITA PELUSO, do hereby certify that this transcript was prepared from the digital audio recording of the foregoing proceeding, that said transcript is a true and accurate record of the proceedings to the best of my knowledge, skills, and ability; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this was taken; and, further, that I am not a relative or employee of any counsel or attorney employed by the parties hereto, nor financially or otherwise interested in the outcome of this action.

*Rita Peluso*

RITA PELUSO

**[1 - behalf]**

| 1 | a | advisory 4:9,11 | appropriate |
|---|---|---|---|
| **1** 4:5 | **ability** 11:9 | 4:13 5:2,15 8:8 | 11:10 |
| **10,000** 16:22 | 17:8 19:7 | **affect** 9:17 | **approximately** |
| **115** 2:8 | **academy** 15:19 | 14:18 15:2 | 8:2 |
| **15** 2:7 | **accurate** 19:5 | **affiliated** 5:6 | **arizona** 8:1 |
| **18266** 19:14 | **act** 3:21 4:4,5 | **ago** 8:10 10:1 | **aspects** 15:14 |
| **1st** 7:11 | 6:9,10,12 7:4,7 | **ahead** 18:5 | 15:15 |

**appropriate**
11:10
**approximately**
8:2
**arizona** 8:1
**aspects** 15:14
15:15
**attention** 15:11
**attorney** 4:2
6:13 7:6 8:1,4
11:7 17:9
19:10
**audio** 19:3
**authority** 4:12
6:15
**authorized** 7:6
**authorizes** 4:2
**awards** 15:19
**awful** 15:22

**b**

**b** 9:10 17:14
**background**
7:22 8:4,9
**bad** 10:15
**base** 10:5
**based** 9:6 10:22
11:2 12:11
14:12,16 17:1
17:2,2,3
**baseline** 17:4
**beau** 7:17,18
**behalf** 4:12
7:18 18:3

---

**1**

**1** 4:5
**10,000** 16:22
**115** 2:8
**15** 2:7
**18266** 19:14
**1st** 7:11

**2**

**2** 4:6
**2021** 14:7,11,11
**2026** 1:5
**25** 2:6

**3**

**3** 4:7
**31-9** 3:10
**375** 1:3 3:3,7
17:22 18:6,9

**4**

**4** 1:5 5:12,19
6:5 9:9
**42:20** 1:11

**5**

**5** 6:8
**500** 15:1
**500,000** 5:6,7
**57:40** 1:11

**9**

**97** 2:5

---

**a**

**ability** 11:9
17:8 19:7
**academy** 15:19
**accurate** 19:5
**act** 3:21 4:4,5
6:9,10,12 7:4,7
7:8 13:6
**action** 3:9 4:1
6:17 7:2,3 9:16
11:10 18:7
19:8,12
**actions** 4:3
**actively** 14:21
**activists** 14:9
**actually** 9:20
9:22 12:14
13:9
**address** 1:9
12:3
**adopted** 7:12
**adopting** 14:12
**advice** 4:17
8:20 14:5
**advisor** 3:21
4:8,8,10 5:15
10:2,7 12:21
13:6 14:4 16:5
16:22 17:1
**advisors** 3:22
9:1 10:9 12:16
16:15,18

---

**advisory** 4:9,11
4:13 5:2,15 8:8
**affect** 9:17
14:18 15:2
**affiliated** 5:6
**ago** 8:10 10:1
**ahead** 18:5
**amend** 6:16
**amended** 3:11
5:2
**amendment**
5:11
**amendments**
3:13
**amounts** 14:10
**analysis** 4:18
5:20,22 6:1
8:18 9:7,10,11
9:19 10:5,15
11:1 12:10
14:17 17:3
**analyze** 9:14
**annual** 5:5
**answer** 3:17
11:13
**answers** 13:22
**anti** 12:2
**anybody** 17:22
**anyway** 6:2
**appealed** 13:7
**apply** 7:5
**appreciate**
13:22

**[benefit - different]**

| | | | |
|---|---|---|---|
| **benefit** 10:5 | **casting** 10:2 | 7:19 15:4,21 | **created** 8:10 |
| **benefits** 9:15 | 15:9,14 | 17:17 | **cu** 1:10 |
| **best** 9:20 11:3 | **central** 10:1 | **companies** 14:7 | **current** 3:11 |
| 19:6 | 15:9,14 | 14:8,10 17:6 | **customers** |
| **big** 14:8 | **certain** 3:22 | **company** 4:1 | 10:17 |
| **bill** 3:14,19,20 | 4:18,19 5:21 | 4:11,13,16 | |
| 4:9 5:13 6:16 | **certificate** 19:1 | 5:16,16 12:13 | **d** |
| 6:19,21,21 8:6 | **certify** 19:2 | 12:17,18 15:1 | **d** 2:6 3:1 |
| 8:7,21 9:7 10:8 | **cetera** 6:3 | **company's** 9:4 | **dealing** 4:21 |
| 11:5,6,6 12:2,6 | **chair** 12:4 14:1 | **compared** 12:7 | **decades** 8:10 |
| 12:7,7 13:5,12 | 14:2 15:6 16:3 | **compensation** | **deceptive** 6:9 |
| 13:12 14:14 | 17:16 | 4:10 8:20 | **decision** 13:7 |
| 15:9 16:7 | **chairman** 3:5 | **conclude** 9:16 | 13:10 14:13 |
| **bills** 18:7 | **change** 14:13 | **concluded** 18:9 | 17:5 |
| **bit** 15:1 | **charge** 8:19 | **conferees** 3:15 | **decisions** 13:13 |
| **blackrock** | **charitable** 5:4 | **connection** | **declaratory** |
| 16:14 | 5:8,9 | 4:15 | 6:18 |
| **board** 9:4 | **chatty** 15:22 | **consumer** 6:10 | **deemed** 6:9 |
| 10:13,14 14:5 | **chooses** 14:21 | 7:3,7 8:3 11:7 | **default** 5:17 |
| 14:11,16 | **circuit** 13:7 | 11:8 13:15 | **defense** 7:18 |
| **board's** 12:13 | **civil** 6:12 | **consumers** 7:18 | **definitely** 18:4 |
| **boards** 12:19 | **claims** 6:14 | 17:5 | **definition** 5:2 |
| **bohi** 2:7 15:5,6 | **clause** 7:10 | **contrary** 12:12 | **definitions** 4:7 |
| **brief** 3:14 4:9 | **clear** 9:12 | **controversial** | 4:22 |
| **bring** 7:6 15:11 | 10:10 | 9:8 13:19 | **degree** 16:16 |
| **broader** 13:4 | **clients** 16:20 | **corrected** 7:1 | **dei** 12:11 |
| | **climate** 14:13 | **costs** 9:15 | **describe** 3:12 |
| **c** | **close** 3:2 18:5 | **counsel** 19:7,10 | **details** 6:4 |
| **c** 2:1 3:1 | **come** 8:15 16:6 | **couple** 3:12 | **developments** |
| **call** 7:16 12:2 | **comes** 3:7 15:9 | 14:3 | 4:19 |
| **called** 3:20 | **comment** 15:10 | **course** 9:16 | **different** 5:19 |
| **carry** 13:19 | **committee** 1:1 | **court** 11:22 | 6:2 12:6 13:5 |
| **case** 13:4 | 3:8,9,11,13 5:1 | **cover** 12:1 | 15:13,15 |
| | 5:10 6:15 7:13 | | |

| | | | |
|---|---|---|---|
| **digital** 19:3 | **economic** 17:2 | **excerpt** 1:11 | **findings** 4:6 |
| **diligence** 16:5 | **effect** 7:11 | **excited** 15:8 | **fine** 10:16 |
| **direct** 3:16 | **eighth** 13:7 | **exclude** 5:3 | **fines** 6:12 |
| **directly** 3:15 | **either** 10:10 | **exempt** 5:10 | **firms** 8:19,22 |
| 17:6 | 12:3 13:1 | **expected** 9:14 | 9:1 |
| **directors** 9:4 | 14:20 | **experience** 3:16 | **first** 7:21 11:17 |
| 14:12 | **employed** 19:8 | **explain** 9:18 | 12:5 |
| **disagrees** 12:21 | 19:11 | 10:9,17 12:9 | **focused** 13:15 |
| **disclose** 9:5,10 | **employee** 19:10 | **explains** 9:12 | **forced** 12:1 |
| 9:11 12:22 | **enacts** 3:20 | **extra** 9:12 | **foregoing** 19:4 |
| **disclosure** 8:22 | **encourage** | **exxon** 14:11,12 | **fraudulent** |
| 10:19 12:8,8,9 | 11:20 | 14:20 | 13:17 |
| 13:18 16:17 | **energy** 14:7 | **exxon's** 14:19 | **frontier** 10:3 |
| 17:7 | **enforcement** | **f** | **function** 13:20 |
| **disclosure's** | 4:3 | | **fund** 8:17 |
| 17:10 | **enjoined** 11:22 | **factual** 9:8 | 10:18 14:21,22 |
| **disclosures** | **erisa** 13:6 | 10:19 13:19 | 16:13,14,14,21 |
| 3:22 5:14 | **esg** 12:2,11 | **fascinating** | 17:13,14 |
| 15:15 | **essentially** 9:5 | 16:2 | **fundamentally** |
| **discussion** 1:3 | 17:4 | **federal** 8:10 | 13:15 |
| 18:9 | **et** 6:3 | 11:22 | **funds** 8:13,14 |
| **distinguishes** | **everybody** | **fee** 8:19 | 10:20 16:15 |
| 13:3,21 | 11:20 | **fees** 12:2 | **further** 15:5,21 |
| **district** 2:5,6,7 | **everyday** 8:13 | **fiduciary** 12:19 | 17:17 19:9 |
| 2:8 | 10:20 15:2 | **final** 3:4,9 18:7 | **fusion** 7:18 |
| **doing** 10:10 | **everyone's** | **financial** 1:1 | **g** |
| **due** 16:5 | 15:11 | 9:6,9,11,15 | |
| **duties** 6:6 | **exactly** 9:12 | 10:2,15,22 | **g** 3:1 |
| 12:19 | **example** 10:12 | 12:10 14:17 | **gary** 2:8 |
| **e** | 14:7,10 | 16:18 17:3 | **general** 4:3 |
| | **examples** 14:3 | **financially** | 6:13 7:6 11:8 |
| **e** 2:1,1 3:1 | **excellent** 11:8 | 19:11 | **general's** 8:1 |
| **earlier** 15:10 | **exception** 5:3,3 | **find** 3:19 | 17:9 |
| 18:3 | | | |

**[give - lewis's]**

give  3:18 12:14 14:2 17:12
given  6:3,14,17
gives  11:9
glass  11:18 18:4
go  3:13 18:5
going  3:17 7:1 7:16,17 9:2 16:22 18:5,7
good  10:15
government  8:10
great  16:8
gross  5:4
groups  5:6
guys  7:20

**h**

happened  14:3 14:6
happening  17:10
happy  11:13,14
headquartered  14:19
hear  7:20
heard  18:8
hearing  3:3 18:6
help  3:18 10:19
hereto  19:11
highlighted  4:8

hire  16:5,15
hiring  17:6
hoheisel  2:5 3:2 7:13 11:16 13:22 15:4,17 17:17,20
hopefully  7:12
house  1:1 3:10 16:11
https  1:10
huge  14:8

**i**

idea  12:18 13:11
illustration  9:21
important  8:6 8:7,21 10:7 11:6 13:14
impractical  10:12
include  4:17
including  6:12
industry  8:8 11:3
information  12:14 13:19 17:4,13
informational  15:12
informed  13:13
injunctive  6:18

institutions  1:1
intent  9:7,13 11:4
interested  16:18 19:12
intermediary  17:11
invest  8:14 10:20 14:21,22 16:13,21
investigate  4:3 6:13 11:9
investment  10:4 13:6
investor  17:12 17:13
investors  10:18 10:20 11:11 12:15 13:17 14:20 15:3 16:17
involve  8:3
involved  3:15
involving  5:18 13:5,6
issues  4:21 13:5
it'd  15:2
items  6:13

**j**

jason  3:3,6 7:13,14
judge  13:10

judgment  6:18
judiciary  3:8,8
july  7:11

**k**

kansas  1:1 11:7 14:4,18,19,20 15:3
kba  18:2
keep  3:14
kelly  18:2
kind  3:21 4:20 5:19 8:9 10:2 13:11 14:8,9 16:16 17:4,7 17:10
know  3:15 11:3 12:20 13:1,18 15:1 16:10,10 16:19,21 17:2 17:9,11
knowledge  19:6

**l**

lauren  2:7
law  7:18
left  18:6
legal  3:16 12:2
legislation  11:21 12:3
legislative  4:6
lewis  18:4
lewis's  11:19

**likely** 9:17
**listed** 4:14
**little** 15:1
**located** 4:7
**long** 6:20 9:14
**look** 11:20 13:9
  16:19 18:4
**looked** 10:4
**looks** 12:1
**lot** 8:2 12:6
  13:5,10,12
  14:6
**lots** 15:12
**love** 15:18

**m**

**made** 5:14
  14:15 15:10
**mail** 16:11
**make** 3:22 9:2
  9:7,8 11:11
  12:19 17:5,9
**makes** 5:15,17
  8:21 16:10
  17:14
**management**
  4:2 5:16 12:17
**mandatorily**
  16:6
**march** 1:5
**matter** 12:11
**matters** 3:16
**means** 6:11

**meant** 12:10
**mechanism**
  11:7
**medium** 8:17
**meetings** 10:13
**meets** 6:1
**members** 14:16
**methods** 9:18
**mind** 9:20
**minutes** 10:1
**missed** 6:20
**missouri** 12:1
  13:4
**move** 3:3
**movement** 14:8
**multiple** 5:6

**n**

**n** 2:1 3:1
**name** 4:5
**narrow** 8:21
  11:5 12:22
  13:14 15:8
**narrower** 12:7
  13:12
**need** 3:17 5:21
  16:6
**needs** 17:7
**neither** 19:7
**neutral** 18:2
**neutrals** 17:21
**nick** 2:5
**non** 9:8 13:19

**normally** 7:4
**note** 5:1 7:10
**notices** 5:21 6:2
**notifications**
  6:6
**novel** 13:11
**number** 12:16

**o**

**o** 3:1
**obviously**
  14:18
**office** 3:6 8:1
  15:16 17:9
**oh** 16:2
**oil** 14:8
**okay** 7:21
  16:20
**ones** 12:16
  16:15
**opponent** 11:19
  18:3
**opponents**
  17:21
**opportunity**
  7:22
**oppose** 12:21
**organization's**
  5:4
**organizations**
  5:4,9
**outcome** 19:12
**outsource** 8:18

**overall** 3:20,21
**overview** 3:18
**own** 8:17 14:20
  14:20 16:5,9
**owned** 9:4 14:9
**ownership** 8:13
**owning** 8:11
**owns** 14:22
  16:11

**p**

**p** 2:1,1
**part** 8:11,12
**parties** 19:8,11
**passed** 3:10
**passing** 11:21
**passively** 14:22
**peluso** 19:2,15
**penalties** 6:12
**pensions** 1:2
**people** 8:14
  16:9,13
**performing** 6:7
**person** 4:10,16
  17:21
**persons** 4:12
**pick** 17:13
**pieces** 12:3
**plenty** 18:6
**policies** 4:20
**policy** 5:18
**position** 10:17
  14:14

**[positively - revenue]** <span style="float:right">Page 6</span>

| | | | |
|---|---|---|---|
| **positively** 9:17 | 8:15 10:22 | **quite** 16:4 | **related** 19:7 |
| **posted** 6:3 | 12:15 | **r** | **relation** 4:15 |
| **practical** 8:17 | **protect** 13:16 | **r** 2:1,5,7,8 3:1,1 | **relative** 19:10 |
| **practice** 8:5 | **protection** 6:10 | **ranking** 14:1 | **relief** 6:18 |
| 11:3 | 7:4,7 8:3 11:7 | **reading** 11:18 | **remedies** 6:11 |
| **practices** 11:3 | 11:8 13:15 | **real** 5:12 | **remove** 6:16 |
| 13:17 | **provide** 5:3 | **realistic** 16:19 | **removed** 6:20 |
| **preemption** | 8:20 | **really** 6:5 10:6 | 16:16 17:11 |
| 13:6 | **provided** 4:15 | 10:14,18 11:4 | **rep** 3:2 7:13 |
| **prepare** 9:19 | 4:16 5:21 | 17:6 | 11:16 13:22 |
| **prepared** 19:3 | **provides** 4:10 | **reason** 12:13 | 14:2 15:4,6,17 |
| **presentation** | 17:4 | 16:9 | 17:17,20 |
| 15:7 | **providing** 5:8,9 | **reasons** 13:8 | **representative** |
| **presented** 11:1 | **provision** 6:16 | **recognized** | 11:18 15:5,22 |
| **previously** 18:8 | 7:5 | 8:11 | 16:1 |
| **private** 6:17 | **proxy** 3:21 4:8 | **recommend** | **representatives** |
| 7:2,3 8:4 | 4:8,9,9,11,13 | 10:13 12:17 | 2:3 |
| **probably** 16:19 | 4:19 5:2,14,15 | **recommendat...** | **requested** 3:7 |
| **proceeding** | 5:17 8:8 9:1,2 | 4:17 5:16,17 | **require** 10:8 |
| 19:4 | 10:7,8,21 | 9:2,3,6 12:12 | **required** 5:14 |
| **proceedings** | 12:16,21 14:4 | 12:13,20 14:15 | **requirement** |
| 19:6 | 16:5,15,22 | **recommendat...** | 8:22 |
| **processes** 9:19 | 17:1 | 4:20 | **requirements** |
| **professional** | **public** 17:22 | **recommending** | 5:13 6:1,5 |
| 8:19 9:1 | **q** | 4:1 | **requires** 3:22 |
| **proponent** 7:17 | **qqicsr** 1:10 | **record** 19:5 | 10:9 12:9 |
| 11:17 | **question** 12:5 | **recording** 1:9 | **research** 4:18 |
| **proponents** | 16:8 | 19:4 | **responsibilities** |
| 17:21 18:1 | **questions** 3:18 | **reference** 11:20 | 8:3 |
| **proposal** 5:20 | 7:14 11:13,15 | **referenced** 18:3 | **retain** 13:16 |
| 9:3,15 12:20 | 11:17 15:5,21 | **regarding** | **retirees** 8:14 |
| 12:21 | 17:18 | 15:13 | **return** 10:3 |
| **proposals** 4:18 | | | **revenue** 5:5 |
| 4:19 5:17,18 | | | |

**[revisor - three]**                                    Page 7

| | | | |
|---|---|---|---|
| **revisor**  3:6 | **service**  4:9,11 | **somebody's** | **tailored**  15:9 |
| **right**  6:17 7:2,3 | 4:14 5:2 | 10:12 | **take**  4:3 7:11 |
| 8:12 13:16 | **services**  4:14 | **sort**  5:12 11:4 | 11:10,20 12:5 |
| 14:13 | 5:5,8,10 6:7 | **sorts**  11:9 | 18:4 |
| **righty**  7:16 | **set**  6:2 | **speak**  17:22 | **taken**  19:9 |
| 17:20 | **seven**  8:2 | **specific**  5:20,22 | **takes**  14:14 |
| **risk**  10:3 | **severability** | 7:5 12:8 15:8 | **talking**  9:21 |
| **rita**  19:2,15 | 7:10 | **speculate**  13:9 | **targeted**  8:7 |
| **roysden**  7:17 | **several**  18:1 | **staff**  11:8 | **tell**  16:20 |
| 7:20 12:4 14:6 | **shareholder** | **standard**  7:9 | **term**  9:13,14,14 |
| 16:8 17:19 | 8:15 9:17 | **start**  18:7 | **terms**  10:10 |
| **rui**  2:6 | **shareholders** | **started**  7:12 | 12:6 |
| **rule**  11:2 | 4:11,13 | 14:9 | **testimony**  9:22 |
| **s** | **shares**  8:11,12 | **state**  4:16 12:1 | 11:19 18:5 |
| **s**  2:1 | 8:15 11:11 | 13:20 15:18 | **texas**  11:21 |
| **s&p**  15:1 | 17:1 | 16:6 | 12:5,6 |
| **says**  7:5 9:9,10 | **short**  3:14 6:19 | **states**  13:16,16 | **thank**  3:5 7:13 |
| 14:15 | 6:22 9:14 | **statutes**  3:6 | 7:14,21 12:4 |
| **sb**  1:3 3:3,6 | **showing**  10:12 | **statutory**  6:1 | 14:2 15:6,7 |
| 17:22 18:6,9 | **shows**  6:22 | **steps**  17:11 | 16:2 17:15,15 |
| **scenario**  16:20 | **side**  3:9 | **stock**  14:20 | 17:18,19 |
| **section**  4:5,6,7 | **signature**  19:14 | **stocks**  16:9,12 | **thing**  7:11 8:8 |
| 5:12,19 6:4,8 | **similar**  11:1,21 | **stuff**  16:2 | 11:4 |
| 6:15,22 7:9 | **simple**  10:6,19 | **subject**  6:11 | **things**  3:19 |
| **see**  7:14 17:18 | 11:5 13:18 | 12:11 | 9:13 10:11 |
| **seeing**  3:2 18:1 | **simply**  9:4 | **subsection**  9:8 | 13:10 |
| **senate**  3:9,11 | 10:19 13:18 | 9:10 | **think**  8:7 9:20 |
| 3:13 5:1,10 | 14:15 17:12 | **subset**  12:18 | 10:4 13:2,9,11 |
| 6:15 | **sir**  7:15,19 | **support**  12:20 | 13:12,20 15:18 |
| **senator**  3:7 | 17:18 | **sure**  11:11 17:9 | **thompson**  3:5,6 |
| **sense**  16:10 | **sized**  8:17 | **t** | **thousands**  8:16 |
| 17:14 | **skills**  19:6 | **t**  1:10 | 12:15 |
| | **small**  12:18 | | **three**  9:13,18 |
| | 14:10 | | 13:1 |

**thumb** 11:2

**time** 3:4 12:12 18:6

**timeframe** 14:7

**title** 6:19,21,22

**today** 3:4 7:17 11:17 15:7,22

**total** 5:7

**tracks** 5:19

**transcriber** 19:1

**transcript** 19:3 19:5

**transparency** 3:21

**treasurer** 11:1 15:18

**treasurer's** 9:22 15:11,16

**tries** 13:13

**true** 10:16 19:5

**truly** 15:14

**try** 3:14

**two** 5:19 9:15 13:1 14:12 16:12 17:11

**type** 10:4

**u**

**unconsciona...** 6:10

**under** 5:10 6:10,12,15 7:3 7:7

**understand** 8:8 10:8,20 11:11 16:4

**universe** 4:21 12:22

**use** 16:22 17:5 17:13

**used** 9:19

**v**

**v** 1:10

**valuable** 8:12 12:14

**value** 9:18

**vanguard** 16:14

**vanzwoll** 18:2

**various** 10:21

**verse** 17:14

**version** 3:10

**videos** 15:13,17 15:19

**viewed** 15:17

**violates** 4:4

**violations** 6:9 7:7 11:10

**vote** 4:12,18 8:12,14,20 9:16 10:13 12:17 14:16 16:10,12

**voted** 11:12 14:11

**votes** 5:18 17:1

**voting** 4:19 10:14,21

**w**

**wait** 11:14

**want** 6:19 10:3 13:8

**wanted** 15:10

**warren** 3:7

**watch** 1:10

**way** 9:5 16:12

**ways** 13:12

**we've** 18:6

**website** 6:3 7:1 15:12

**wednesday** 1:5

**welcome** 7:19

**went** 3:8 14:4

**white** 2:8 15:22 16:2 17:15

**wife** 16:11

**winning** 15:19

**worked** 7:22

**works** 16:13

**written** 9:6,9 9:11 10:22 11:19 12:10 14:17 17:2,3 18:1,3

**www.youtub...** 1:10

**x**

**xu** 2:6 11:18 14:2

**y**

**yeah** 11:16 14:6

**year** 8:16 11:21 16:11

**years** 8:2,9